UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------------X
THEODORE   JOHNSON                                                  CV No.


                        Plaintiff,                    COMPLAINT


      -against-

CIGNA CORPORATION,

                        Defendant
------------------------------------------------------------------------------------X

Plaintiff, Theodore Johnson, by his undersigned attorney, as and for his complaint against defendant CIGNA Corporation, respectfully alleges:

## **INTRODUCTORY STATEMENT**

1. This is an action brought by the plaintiff, Theodore Johnson, against the defendants CIGNA Corporation ("CIGNA") for the arbitrary and capricious denial of long-term disability benefits and to remedy violations of Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132.

## **PARTIES**

2. Plaintiff, Theodore Johnson, is currently 52 years old and was born on 1/2/53 in Port Chester, NY.  Plaintiff at all times herein mentioned was, and is, a resident of the State of New York.

3. Mr. Johnson is a widow with an 11 year old son and resides in an apartment located at 151 Fenimore Road, Mamaroneck (Westchester County), New York 10543.  Mr. Johnson graduated from Mamaroneck High School in 1971.  Mr. Johnson served in the Navy from 1972-1978 as a Boiler Technician.  Mr. Johnson has not received any private or public vocational rehabilitation services for job training or placement.

4. Plaintiff is informed and believes, and on that basis alleges, that defendant CIGNA at all times herein relevant was, and now is, a corporation duly registered and authorized to do business and regularly conducted substantial business as an insurer and issuing insurance policies in the state of New York.   Defendant, CIGNA is a corporation and an insurance company with its principal place of business located at One Liberty Place, 1650 Market Street Philadelphia, Pennsylvania 19192.

5. On or about 7/89, and at all relevant times thereafter, plaintiff Theodore Johnson was an employee of Cablevision Systems Corporation ("Cablevision") insured under Group Long Term Disability Insurance Policy LK 30472 a true and correct copy of which policy is attached hereto as Exhibit "A".

6. Mr. Johnson was a Customer Service Representative for Cablevision in Mamaroneck, NY. This occupation involved speaking to customers to schedule repair calls dealing with billing disputes. The U.S. Department of Labor's <u>Dictionary of Occupational Titles</u> ("DOT") classifies this customer service position as semi-skilled Sedentary Work.

## JURISDICTION AND VENUE

7. This action arises under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 to recover benefits due as a beneficiary of a plan governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461. Jurisdiction is conferred upon this court pursuant to 29 U.S.C. § 1132(e)(1). The Court has subject matter jurisdiction over this matter pursuant to a federal question under 28 U.S.C. § 1331.

8. Venue in this district is proper pursuant to 28 U.S.C.A. sect. 1391(b) and (c) and 29 U.S.C.A. 1132 (e)(2). Defendant conducts business within the Southern District of New York, and the acts alleged herein were committed in whole or in part in the Southern District of New York.

**SUBSTANTIVE ALLEGATIONS**

9. In October of 1999, Mr. Johnson had an accident that resulted in injuries to his neck. Since this accident, Mr. Johnson has had constant neck pain radiating into the shoulders radiating down the left arm to the elbow; and constant lower back pain radiating into the right leg when he sits for more than one hour. Mr. Johnson also has daily headaches; numbing in the lower back; continuous muscle spasms in his neck and shoulder; easy fatigue; occasional difficulty in sleeping; and weakness in upper extremities. Mr. Johnson's condition also worsens in damp weather.

10. Mr. Johnson takes the following medications: Carisoprodol 350 mg QiD, a muscle relaxer for his spasms; Diclofenac Sodium 100 mg, an anti-inflammatory; and Tylenol with Codeine #3 for pain; ultrum (tramidol). Some of the common side effects for Carisoprodol include drowsiness, dizziness, headache, depression, and insomnia. Tylenol with Codeine is a known drug that interacts with Carisoprodol to increase its effects and can lead to heavy sedation.

11. Mr. Johnson has the following handicaps: restrictions of sitting, standing, walking, bending, lifting and carrying, and reduced physical stamina. Mr. Johnson's neck and lower back injury with residual severe pain, and physical limitations, presents a severe impact on his ability to obtain and maintain employment. Mr. Johnson is unable to perform the essential functions of his past relevant work as a Cable Television Customer Service Representative and to sustain the physical requirements of this job on a sustained

basis. Mr. Johnson is also unable to transfer his skills to other types of semi-skilled occupations, because he is unable to perform any Sedentary, Light, Medium, Heavy, or Very Heavy Work existing in the local or national economy on a sustained, full-time, regular, competitive basis. Mr. Johnson is unemployable for any job existing in the competitive labor market.

12. After the Accident, Mr. Johnson continued to work on and off through the use of sick days until October 30, 2001. He could no longer perform his duties as a customer service representative and applied to CIGNA Corporation for and received Short Term Disability benefits. Mr. Johnson received the maximum 26 weeks of benefits completed on May 8, 2002.

13. Mr. Johnson promptly submitted an application for Long Term Disability. Mr. Johnson then filed a claim for long-term disability as well as a claim for waiver of premiums for the policy as he was totally disabled.

14. According to Mr. Johnson's policy:

The employee is considered Disabled if, because of Injury or sickness, he or she is either

    1) unable to perform all the material duties of his Regular Occupation or Qualified Alternative even with reasonable accommodation; or

    2) unable to earn more than 80% of his or her Indexed Covered earning

The plan does not grant CIGNA discretionary authority and the applicable standard of review is de novo.

15. Plaintiff has suffered disability as defined under the policy and has been totally and continuously not working.

16. As a result thereof, it is averred that plaintiff has been unable to perform any occupation for which he is reasonably fit by education, training or experience and thus meets the definition under the policy of total disability.

17. Mr. Johnson submitted to the defendant the following medical notes as well as other notes and medical evidence demonstrating that he was disabled under the definition of the plan:

    On 1/10/00 and 10/4/00, Dr. Himelfarb, noted that an MRI taken on Mr. Johnson indicated "Spondylicic change with diffuse bulging disc seen at C4-5, including compression of the cervical cord; Central and left sided disc herniation at C6-C7 with a compression of the cervical cord." On 1/26/00, Dr. Schnur noted that an MRI taken on Mr. Johnson indicated "Mild disc bulges at multiple levels, most prominent at L2-L3." On 4/3/00, New York United Medical Hospital Center diagnosed Mr. Johnson with cervical radiculopathy with a herniated disc at C6/C7 projecting to the left foramen and compressing the nerve root. From 11/01 to 12/01 Mr. Johnson attended physical therapy two times per week. On 11/19/01, Dr. Khoury noted that an MRI taken on Mr. Johnson indicated "Diffuse degenerative disc disease more marked from C-4-5 and C-6-7." On

4/25/2002 and 7/17/2002, Dr. Gross, Mr. Johnson's treating physician diagnosed Mr. Johnson with cervical and lumbar radiculopathy." On 7/11/02, Dr. Stern, a neurosurgeon, stated that Mr. Johnson was "No longer able to perform the essential functions of his employment and I consider him fully disabled." On 8/8/02 Dr. Paglia diagnosed Mr. Johnson with chronic neck and back pain

18. On July 9, 2002, Patty Ursiny, CIGNA's Case Manager for the long-term disability claim sent Mr. Johnson a denial letter for his long term disability claim as well as a letter denying his wavier of premium claim.  In the denial letter, Ms. Ursiny overlooked the overwhelming medical evidence and doctors' opinions opining that Mr. Johnson was totally disabled; even though at the time, CIGNA failed to have a doctor examine Mr. Johnson or review his file.

19. In the letter, CIGNA based its medical assessment that Mr. Johnson was not disabled on the review of Michelle Dunn, a nurse case manager who was not named in the letter. This assessment was clearly erroneous and based on two material mistakes and the total disregard of the opinions of Mr. Johnson's treating physicians.

20. The nurse case manager was not qualified to make this decision and there is no mention in the letter of her background that demonstrates that she is an expert on cervical radiculopathy.  Mr. Johnson applied for Long Term Disability and was denied by an unqualified nurse.   Her arbitrary and capricious decision was clearly erroneous and made in bad faith, as the decision makers' decision relied on mistakes, overlooked important

factors and overlooked substantial evidence.  There was absolutely no rational justification for the nurse practitioner's mistakes.

21. The nurse's decision was entirely based on mistake and no substantial evidence otherwise supports her conclusion.  The nurse ignored the opinions of all of Mr. Johnson's treating physicians who unanimously stated that he was totally disabled and unable to perform the duties of his job.

22. The nurse case manager based her opinion on the erroneous belief that Dr. Gross cleared Mr. Johnson for sedentary work.  Dr. Gross never indicated that Mr. Johnson's current level of functionality was sedentary; in a letter to the nurse case manager dated May 21, 2002, Dr. Gross indicated that Mr. Johnson was totally disabled and unable to perform the functions of his job and could not even perform sedentary work.

23. In another letter from Dr. Gross to Dr. Paglia dated April 25, 2002, Dr. Gross stated Mr. Johnson "has cervical and lumbar radiculopathy with no change with the current medical regimen.  He is not able to perform his essential functions of his job even with reasonable accommodations."

24. In light of the plethora of medical evidence indicating that Mr. Johnson was disabled, the letter stated that CIGNA did not have sufficient medical documentation to support the doctor's opinions that Mr. Johnson was disabled.

25. The letter failed to state with any specificity what further evidence Mr. Johnson needed to provide to satisfy CIGNA. The letter stated that Mr. Johnson should write a letter explaining why he was disabled; provide further medical evidence, completion of a physical assessment form, and a catch-all provision that states any other pertinent information.

26. CIGNA failed to conduct a reasonable investigation, because it failed to have an independent medical investigator examine Mr. Johnson to refute any of the claims that the Medical Doctors made in the aforementioned reports and denied the claim based on a report written based on a material mistake made by an unqualified individual, who has no medical degree.

## AS AND FOR A FIRST CAUSE OF ACTION:

**Breach of Contract against Defendant CIGNA Corporation**

27. Plaintiff incorporates by reference each and every allegation of the Complaint as set forth in paragraphs 1-27 herein.

28. Upon employment with Cablevision, as a term and condition of his employment, Plaintiff was covered by the Defendant's long term disability insurance policy.

29. Each year, up to 2002, Defendant reissued the Policy to plaintiff.

30. Throughout the period of said Policy, Plaintiff regularly paid premiums and performed each act required on his part to keep said Policy in full force and effect. Plaintiff intended and expected thereby to be assured peace of mind and financial and economic security in the event of becoming disabled.

31. As a result of the aforementioned injuries, Plaintiff became totally disabled and was forced to completely stop work in August 2002.

32. CIGNA paid short term disability benefits to Plaintiff, but declined to pay long-term disability benefits. The Policy would have paid full benefits initially of $2907.00 per month and then, after a waiting period, of $2907.00 per month from August, 2002 until January, 2015. On his statement of disability, plaintiff informed defendant of his employment as a customer service rep and that his employer was Cablevision. He further informed defendant that he had been working 40 hours a week as a customer services rep at the time of his injury.

33. Defendants did not conduct an independent medical examination before discontinuing benefits and had no proof whatsoever that plaintiff could return to his full-time employment as a customer service's representative. At the time that defendant arbitrarily discontinued plaintiff's benefits; he was and always has been totally disabled from his work as a customer services representative.

34. Pursuant to the instructions in the aforementioned letter of denial, plaintiff requested the reinstatement of his Long Term Disability benefits and informed defendant that even after surgery, he still had symptoms of chronic neck and back pain which made it impossible for him to return to work.

35. Defendant repeatedly wrote to plaintiff and stated that there was no objective medical evidence of his disability without ever providing a definition of "objective" medical evidence.

36. Notwithstanding their obligation to do so, defendants have failed and refused, and continue to fail and refuse, to pay plaintiff the total disability benefits to which plaintiff is entitled under the Policy. Said failures and refusals constitute a material breach of the Policy.

37. As a direct and proximate result of said breach plaintiff has been injured and damaged in an amount of $2907.00 per month for each month owing to him under his disability Policy.

38. WHEREFORE, plaintiff prays judgment against defendant, and each of them, as hereinafter set forth.

## AS AND FOR A SECOND CAUSE OF ACTION

**Breach of the Covenant of Good Faith and Fair Dealing**

As and for a separate and distinct Second Cause of Action, plaintiff complains against defendant as follows.

39. Plaintiff incorporates by reference each and every allegation of the Complaint as set forth in paragraphs 1-38 herein.

40. At all times herein relevant, said defendant agreed to act in good faith and deal fairly with plaintiff when it entered into the Policy and accepted premiums from plaintiff. Said defendant thereby assumed a special relationship with, and fiduciary obligations to, plaintiff, and agreed to abide by their respective duties. Nevertheless, said defendant refused and failed to act in good faith and deal fairly with plaintiff, and breached said obligations, as is set forth more particularly below.

41. In the absence of a reasonable basis for doing so, and with full knowledge or conscious disregard of the consequences, said defendants have failed and refused to pay plaintiff the benefits owed under the Policy and the laws of the state of New York.

42. Said defendants, and each of them, engaged in, and continue to engage in a course of conduct to further their own economic interest and in violation of their contractual and fiduciary obligations to plaintiff including, but not limited to:

43. Misrepresentation of pertinent policy provisions and coverages at issue;

44. Unreasonable and improper investigation of plaintiff's Claim;

45. Failing to place the financial interests of plaintiff policyholder on an equal par with their own financial interests;

46. Forcing plaintiff to institute litigation to recover the amounts due plaintiff under his insurance Policy; and,

47. Other wrongful and illegal conduct according to proof at trial.

48. Defendants continue to engage in the aforementioned acts, and said conduct and bad faith constitutes a continuing tort and continuing bad faith to plaintiff, causing plaintiff continuing damage as described herein beyond the date of the filing of this action.

49. As a direct and proximate result of the aforementioned conduct of defendant, and each of them, plaintiff has been damaged in the amount of $2907.00 per month, said amount being the amount of the unpaid claim and continuing hereinafter until paid.

50. As a further direct and proximate result of the aforementioned conduct of defendant and each of them, plaintiff has been damaged in a sum in excess of the jurisdiction of this Court to be determined according to proof at trial of this matter.

51. As a further direct and proximate result of the aforementioned conduct of defendant and each of them, plaintiff has suffered mental and emotional distress, including, but not limited to, frustration, depression, nervousness and anxiety, and has thereby incurred general damages for a total amount to be shown at trial.

52. As a further direct and proximate result of the aforementioned conduct of said defendant and each of them, plaintiff has been obliged to expend or incur liability for costs of suit and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

53. As a further, direct and proximate result of the aforementioned conduct of defendant, and each of them, plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, the lack of availability of said sums to plaintiff.

54. The acts alleged were part of defendant' ordinary business practice designed to keep from paying Policy benefits which were and are legitimately owed to the plaintiff in order to increase the defendant' profits. In doing so, and in doing the acts set forth above, the

defendant acted despicably, willfully, wantonly, oppressively, fraudulently or in conscious disregard of the plaintiff's rights.

55. Plaintiff therefore seeks exemplary damages in a sum to be set by the jury in an amount sufficient to punish the defendant and to be certain that they never again perpetrate such evils upon Policyholders.

56. WHEREFORE, plaintiff prays judgment against defendant, as hereinafter set forth.

### AS AND FOR A THIRD CAUSE OF ACTION

**Intentional Misrepresentation**

As and for a separate and distinct Third Cause of Action, plaintiff complains against defendant as follows.

57. Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in paragraphs 1-56 herein.

58. In the Policy, and at its inception, defendant represented to plaintiff that defendant would, in the event of certain contingencies, pay and continue to pay monies to plaintiff in the event of plaintiff's disability, with certain exceptions not relevant here.

59. At the time said representations were made by said defendant, defendants were acting with the intent to deceive and defraud plaintiff, and in bad faith.

60. Said representations of material fact were false, in that defendant did not intend and does not intend to pay and to continue to pay such monies, notwithstanding plaintiff's entitlement thereto, pursuant to the Policy and the laws of New York.

61. Based upon said representations, plaintiff was induced to enter into the Policy and pay premiums therefore. Had plaintiff known the true facts, plaintiff would not have taken such action.

62. After plaintiff's disability benefits were wrongfully terminated defendant fraudulently represented to plaintiff that upon receipt of "objective" documentation of his disability, they would fairly reconsider their initial denial of benefits.

63. As a result of defendant' described conduct and promises, alleged in the preceding paragraphs and incorporated herein by reference, plaintiff, who was and always has been disabled within the meaning of the Policy, was lulled into a false sense of security, and believed that the documentation from his doctors, which plaintiff was supplying to defendant pursuant to their request, was "objective" evidence of his continuing disability and would result in the reinstatement of plaintiff's disability benefits as promised.

64. Plaintiff relied on defendant' representations that it would fairly consider his additional medical documentation of his disability. Said representations were false and were made for the purpose of inducing plaintiff to delay the filing of his claim for damages, up to and including November 2002.

65. Said defendant knew that said representations were false and fraudulent at the time they were made, and made such false and fraudulent representations for the purpose of inducing plaintiff to rely thereon to his detriment and with the intent to prevent plaintiff from filing a lawsuit until defendant could argue that the statute of limitations had run.

66. Plaintiff, at the time said representations were made, was ignorant of their falsity, but believed them to be true and on reliance thereon delayed filing the instant suit.

67. Plaintiff reasonably and justifiably relied on said representations, in view of the superior knowledge of said defendant, and the fiduciary or special relationship between the parties.

68. As a direct and proximate result of the aforementioned conduct of defendant, and each of them, plaintiff has been damaged in the amount of $2907.00 per month, said amount being the amount of the unpaid claim and continuing hereinafter until paid.

69. As a further, direct and proximate result of the aforementioned conduct of defendant and each of them, plaintiff has been damaged in a sum in excess of the jurisdiction of this Court to be determined according to proof at trial of this matter.

70. As a further direct and proximate result of the aforementioned conduct of defendant and each of them, plaintiff has suffered mental and emotional distress, including, but not limited to, frustration, depression, nervousness and anxiety, and has thereby incurred general damages for a total amount to be shown at trial.

71. As a further, direct and proximate result of the aforementioned conduct of defendant, and each of them, plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

72. As a further, direct and proximate result of the aforementioned conduct of defendant, and each of them, plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, the lack of availability of said sums to him/her.

73. The conduct of defendant as described hereinabove was despicable and fraudulent and was further done willfully, oppressively, maliciously, and/or with conscious disregard of the rights of plaintiff, and with the intent to annoy, harass or injure plaintiff such that plaintiff is entitled to a recovery of exemplary damages.

**WHEREFORE, plaintiff prays judgment against defendant, as follows:**

74. Based on the foregoing allegations, plaintiff requests the following relief:

    1. General damages for failure to provide benefits under the subject contract of insurance in a sum to be determined at the time of trial;

    2. An order awarding plaintiff the benefits to which he is entitled under the Pension Plan;

    3. Special damages in an amount according to proof;

    4. A declaratory judgment that the practices complained of are unlawful and void;

    5. An award of pre-judgment and post judgment interest on all amounts awarded pursuant to plaintiff's claims;

    6. An award of all costs and attorney's fees pursuant to 29 U.S.C. § 1132(g)(1);

    7. For costs of suit herein incurred;

    8. An order awarding all lost back benefits owed and any other forms of compensation plaintiff lost;

    9. An award of all compensatory damages incurred by plaintiff;

    10. An award of punitive and exemplary damages; and

    11. For such further relief as the court deems just and proper.

Respectfully submitted,

Dated: November 10, 2005

_____
Barbara Matthews
BM 4281
Attorney for Plaintiff
P.0. Box 757
125 Jefferson Avenue
St. James, NY 11780
Phone: (631) 584-0163
Facsimile: (631) 584-3443